**FILED**
**MARCH 15, 2022**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STEPHEN A. KARR, | ) | |
| | ) | No. 38250-8-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DEPARTMENT OF LABOR AND | ) | UNPUBLISHED OPINION |
| INDUSTRIES, | ) | |
| | ) | |
| Respondent. | ) | |

STAAB, J. — Stephen Karr appeals from a hearing de novo in superior court that affirmed a decision of the Board of Industrial Insurance Appeals (Board) that Karr's injury to his knee was not related to a prior workplace injury. On appeal to this court, Karr argues that the superior court failed to consider and decide on an alternative causation argument raised in the pleadings. He also contends that the court erred in finding that his knee injuries were not caused by a prior workplace injury and, separately, that his workplace injuries did not cause him time-loss from work for several months.

We find that Karr is procedurally barred from raising the alternative causation argument because he failed to include it in his notice of appeal to the Board and failed to argue this theory before the Board. We also hold that substantial evidence supports the superior court's findings and affirm the superior court's order.

BACKGROUND

In 2002, Karr sustained an injury to his left knee at work. Karr underwent multiple surgeries to his left knee, culminating in total knee replacement. While he was in the hospital recovering from surgery, Karr fell off of his hospital bed and injured his lower back. Karr had several lower back surgeries to treat this condition. The Department accepted the back injury as casually related to Karr's industrial-related knee injury.

In December 2015, following an independent medical examination, Dr. Roman Kutsy, M.D., indicated that while Karr's industrial injuries limited his mobility, he could perform sedentary work or a light-duty position such as courier.

In November 2016, Karr fell and struck his right knee on a concrete step. After this fall, he experienced pain in his right knee. Karr alleged that his previously-accepted back injury caused his right knee to buckle, which caused his fall, which caused prior existing but asymptomatic arthritis to become symptomatic.

Karr filed a claim with the Department of Labor and Industries, alleging that his prior workplace injury caused his fall and that the fall aggravated his previously asymptomatic knee arthritis. The Department reviewed Karr's medical records and rejected the claim, concluding that his prior workplace injury did not aggravate his knee arthritis. A month later, the Department issued a second order denying time loss

compensation based on its determination that the workplace injury did not cause Karr's knee injury.

Karr appealed these orders to the Board of Industrial Insurance Appeals. In his notice of appeal to the Board, Karr asserted that surgery for his accepted lower-back condition had "resulted in nerve damage in his right leg," and this nerve damage caused "his right knee to buckle." Administrative Record (AR) at 66. When he fell, he struck his knee against a concrete step and aggravated his knee arthritis. Karr asked the Board to find that his knee arthritis had been "aggravated" by the fall. He identified no other potential causes for the aggravation of his knee arthritis. *See* AR 78-79, 93-94.[1]

Several medical witnesses testified at the hearing. Karr presented the testimony of Dr. Christopher Lang, M.D. Dr. Lang testified that Karr's back injury had resulted in weakness and atrophy in his quadriceps, which caused his right knee to buckle, which then caused Karr to fall and aggravate a pre-existing condition in his right knee. In Dr. Lang's opinion, Karr's industrial injuries were the proximate cause of Karr's previously asymptomatic knee arthritis becoming symptomatic. Dr. Lang also surmised that atrophy, such as this, would normally make an arthritic knee hurt even more than it otherwise would. But he did not testify that the atrophy caused Karr's knee arthritis to become symptomatic, notwithstanding the fall.

Ms. Elizabeth Turner, M.D., also testified. She was Karr's treating provider and disagreed with Dr. Lang's opinion on causation. Dr. Turner testified that shortly after the

3

accident, Karr told her that he fell because he was dizzy and lost his balance due to

medication. Karr did not relay that his right knee buckled or caused the fall. Dr. Turner

opined that Karr's fall was not caused by his back injury and was not related to his

industrial claim.

The industrial appeals judge issued a proposed decision and order. In findings of

fact 4, the judge found:

> On some date prior to December 21, 2016, Mr. Karr fell on his right knee
> causing an aggravation of preexisting degenerative arthritis in his right
> knee. More likely than not, this fall was not caused by quadriceps
> weakness in his right thigh due to injury to the L3-4 level of his lumbar
> spine. More likely than not, this fall was due to a loss of balance due to
> some pathology in Mr. Karr's head. More likely than not, this fall did not
> occur when Mr. Karr was traveling home after receiving an injection in his
> lumbar spine. The aggravation of Mr. Karr's preexisting arthritis in his
> right knee was not proximately caused by the industrial injury.

AR at 29.

Related to his claim of time-loss compensation, in findings of fact 6, the industrial

appeals judge found that:

> [d]uring the period May 18, 2017, through December 29, 2017, restrictions
> due to Mr. Karr's industrial injury did not prevent him from obtaining and
> performing reasonably continuous gainful employment. During such
> period he had the residual physical capacity to perform sedentary work and
> light duty work as a courier.

AR at 30.

After Karr's petition for review was denied by the Board, he filed an appeal to the superior court. The court considered the record de novo and adopted the Board's findings and conclusions.

Karr timely appealed to this court.

ANALYSIS

In his first issue on appeal, Karr contends that the Board and superior court erred by ignoring an alternative theory of causation presented through the testimony of Dr. Lang and not refuted by any of the other medical witnesses. Karr contends that Dr. Lang testified that notwithstanding the fall, the atrophy in Karr's quadriceps was caused by his back injury, and the atrophy itself would normally make an arthritic knee hurt more than it otherwise would.

The Department responds that Karr is precluded from raising this alternative theory because he did not include it in his notice of appeal to the Board. In the alternative, the Department argues that the evidence does not support the alternative theory because Dr. Lang never testified that the aggravation to Karr's arthritis was caused by the atrophy and not the fall.

In his reply brief, Karr addresses the Department's procedural objection. He argues that since his hearing before superior court was de novo, he was allowed to raise any issue supported by the evidence. Karr also contends that the issue of alternative

causation was raised before the Board, and his notice of appeal was broad enough to encompass the alternative causation theory.

We agree with the Department and hold that Karr's theory of alternative causation is not properly before this court. The issue is decided by RCW 51.52.115, which provides:

> Upon appeals to the superior court only such issues of law or fact may be raised as were properly included in the notice of appeal to the board, or in the complete record of the proceedings before the board. The hearing in the superior court shall be *de novo, but* the court shall not receive evidence or testimony other than, or in addition to, that offered before the board or included in the record filed by the board in the superior court as provided in RCW 51.52.110.

(Emphasis added.)

In his notice of appeal challenging the Board's finding on the cause of his knee injury, Karr argued that the evidence did not support the Board's finding on causation because it was clear that his fall had caused the aggravation, and the fall was caused by the back injury. Specifically, his notice of appeal on the knee injury stated: "We are requesting the department reverse their decision and allow the right knee arthritis as it has been aggravated by a fall as a direct result from treatment of the lumbar spine which is an accepted condition." AR at 94.

Karr's argument that his notice of appeal was broad enough to include the alternative causation issue is not well-received. In support of this argument, Karr cites to

his second notice of appeal, which only addressed his time-loss claim.  He does not contend that the applicable notice of appeal raised the issue of alternative causation.

Nor was the issue of alternative causation "in the complete record of the proceedings before the board."  RCW 51.52.115.  Although Karr claims that the issue was raised before the Board, he does not cite the record in support of this contention.  (Karr cites AR 11, a page from his petition for review in which Karr argued that his back injury caused weakness to his right knee, which caused it to buckle.  There is nothing on this page suggesting a theory of alternative causation.)

Finally, we reject Karr's argument that because his hearing before superior court was de novo, it allowed him to raise any issue supported by the evidence.  RCW 51.52.115 is clear.  While the hearing in superior court is de novo, the only issues that may be raised in superior court are those issues of law or fact that were included in the notice of appeal to the Board.

Karr's second argument on appeal is that the Board and superior court erred in finding that his earlier industrial injury did not cause his knee injury.  On appeal from superior court in a worker's compensation case, our review is limited to whether substantial evidence supports the superior court's findings of fact and whether the court's conclusions of law flow from its findings.  *Matthews v. State*, 171 Wn. App. 477, 493, 288 P.3d 630 (2012).  Karr does not assign error to any of the Board's findings or the superior court's findings.  Thus, they are verities on appeal.  *Id*.

The unchallenged findings support the finding that the aggravation of Karr's knee arthritis was not caused by his back injury. Specifically, the superior court adopted the Board's findings of fact 4, which found:

> On some date prior to December 21, 2016, Mr. Karr fell on his right knee causing an aggravation of pre-existing degenerative arthritis in his right knee. More likely than not, this fall was not caused by quadriceps weakness in his right thigh due to injury to the L3-4 level of his lumbar spine. More likely than not, this fall was due to a loss of balance due to some pathology in Mr. Karr's head. More likely than not, this fall did not occur when Mr. Karr was traveling home after receiving an injection in his lumbar spine. The aggravation of Mr. Karr's pre-existing arthritis in his right knee was not proximately caused by the industrial injury.

AR at 29.

To the extent that Karr challenges this finding on appeal, there is substantial evidence in the record to support the finding. Dr. Turner testified that she believed Karr fell and hit his knee because he lost his balance, not because his knee buckled.

Karr argues that Dr. Turner's testimony is not credible because it is "inconsistent and full of contradictions." Br. of Appellant at 24. Instead, he argues that the Board and the court should have accepted the testimony of Dr. Lang and Dr. Kutsy. Karr's challenge on appeal misapprehends our role as an appellate court. As an appellate court, we will not make credibility determinations. *Zavala v. Twin City Foods*, 185 Wn. App. 838, 869, 343 P.3d 761 (2015).

Karr's reliance on *Zipp v. Seattle Sch. Dist. No. 1*, 36 Wn. App. 598, 676 P.2d 538 (1984), is misplaced. In *Zipp*, the court found that substantial evidence did not support

the court's finding because there was no medical testimony establishing that the industrial injury caused the subsequent disability. *Id*. at 605-06. The court made it clear that it was not weighing evidence. *Id*. at 606.

We find that Dr. Turner's testimony provides substantial evidence to support the court's findings of fact 4.

Karr's final issue on appeal is that the superior court erred in finding that Karr was not entitled to time-loss benefits. In findings of fact 6, the superior court found:

> During the period May 18, 2017, through December 29, 2017, restrictions due to Mr. Karr's industrial injury did not prevent him from obtaining and performing reasonably continuous gainful employment. During such period he had the residual physical capacity to perform sedentary work and light duty work as a courier.

AR at 30.

Again, Karr does not assign error to this finding on appeal. Nonetheless, it is supported by substantial evidence. Dr. Kutsy testified that Karr could perform light work despite his workplace injuries. Dr. Lang testified that Karr could do sedentary work. Another doctor testified that Karr should be medically retired because he could not perform any work due to a combination of conditions that were not related to his industrial injuries.

On appeal, Karr's only contention on this issue rests on our reversing the superior court's finding that Karr's prior workplace injuries did not cause the knee injury. He contends that if a workplace injury aggravated his knee arthritis, we should accept Dr.

Lang's testimony that Karr could not work as a courier during this period and was unable to work. Br. of Appellant at 26. Because we affirm the superior court's decision that a workplace injury did not cause Karr's knee injury, we also agree that findings of fact 6 is supported by substantial evidence.

## CONCLUSION

We affirm the superior court's findings of fact and conclusions of law finding that his workplace injuries did not cause the aggravation of Karr's preexisting knee arthritis. As such, we deny Karr's request for attorney fees on appeal.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, J.

WE CONCUR:

_____
Lawrence-Berrey, A.C.J.

_____
Pennell, J.

10